# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SUSAN KESINGER,                          )
                                         )
              **Plaintiff,**           )
                                         )     **CIVIL ACTION**
v.                                       )
                                         )     No. 14-1030-JWL
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
              **Defendant.**          )
_____  )


## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Commissioner's step three evaluation of Listing 8.04, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

**I.    Background**

Plaintiff applied for SSD and SSI, alleging disability beginning April 4, 2011. (R. 12, 177-92). She exhausted proceedings before the Commissioner, and now seeks

judicial review of the final decision denying benefits.  She alleges the Administrative Law Judge (ALJ) erred in evaluating her skin impairments at step three of the Commissioner's five-step sequential evaluation process; that the residual functional capacity (RFC) assessment is not supported by substantial evidence; and that the credibility determination was improper and is unsupported by the evidence.

The Act guides the court's review.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  In judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner determines at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001);

Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

For reasons explained below, the court finds that remand is necessary because the ALJ failed to properly explain his consideration of Listing 8.04 at step three of the evaluation process.  Because the credibility determination and RFC assessment must take place after step three of the process, proper consideration and explanation of Listing 8.04 will potentially affect the credibility determination and the RFC assessment.  Therefore, it would be merely an impermissible advisory opinion for the court to consider those issues at this time.  Plaintiff may make her arguments in that regard on remand.

**II.     Consideration of Listing 8.04**

Plaintiff claims that the ALJ "failed to consider [Ms.] Kesinger's condition under the criteria for listing 8.04 or even indicate what listing and/or impairments he considered at step three." (Pl. Br. 7).  Citing this court's decisions in Whitmer v. Astrue, No. 11-1390-JWL, 2012 WL 5471256 (D. Kan. Nov. 9, 2012); Love v. Astrue, No. 10-1278-JWL, 2011 WL 2670095, *6-7 (D. Kan. July 7, 2011); Fisher v. Astrue, No. 11-2068-JWL, 2012 WL 33200 (D. Kan. Jan. 6, 2012); and Weber v. Astrue, 2010 WL 5137543 (D. Kan. Dec. 9, 2010); she argues that the ALJ did not meaningfully address Listing 8.04 sufficiently to allow the court to determine whether substantial evidence supports the ALJs' step three finding.  (Pl. Br. 7-8).  Plaintiff then argues that the "evidence supports a finding that [Ms.] Kesinger meets or equals listing 8.04." Id. at 10.  The Commissioner

4

argues that the ALJ's step three determination was proper because the medical expert, Dr. Houser, testified that he had considered the skin Listings at 8.00, and that in his opinion Plaintiff's condition does not meet or equal a listed impairment.  (Comm'r. Br. 3-4).  Moreover, she argues that the ALJ's step four and step five determinations that Plaintiff is not disabled render any lack of specificity at step three harmless.  Id. at 4.

> **A.      Standard for the Step Three Evaluation**

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that she considers disabling.  20 C.F.R. §§ 404.1525(a), 416.925(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling.  Williams, 844 F.2d at 751; see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, plaintiff "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)).  "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify" to meet or equal the listing.  Zebley, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define

impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." Caviness v. Apfel, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

Listing 8.04 requires "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 8.04 (emphasis in original). The regulations define "extensive skin lesions:"

> 1. Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

Id. § 8.00(C)(1)(a)-(c) (emphasis in original).

**B.      Analysis**

Plaintiff is correct that the ALJ found at step two of the evaluation process that Plaintiff has "chronic skin lesions in the skin folds" which is a severe impairment in this case. (R. 14). As Plaintiff points out, at step three the ALJ found that the evidence does not support a finding that the severity of Plaintiff's impairments meet or equal a Listing. (R. 16). The ALJ noted that obesity is no longer a listed impairment and he specifically explained his evaluation of Plaintiff's obesity in accordance with Social Security Ruling (SSR) 02-1p. Id. But, he did not point to any specific Listed impairment which he had considered and did not identify any particular criterion of any Listing which he found was not met or equaled. Moreover, despite finding that Plaintiff has "chronic skin lesions," and despite that the regulations require that the Commissioner will base her assessment of the severity of skin disorders on (among other factors) "the extent of [a claimant's] skin lesions," 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 8.00(C), the ALJ did not mention any of the criteria of any skin disorder Listing in his step three evaluation.

After his step three analysis, in the narrative discussion of his RFC assessment, the ALJ discussed Plaintiff's allegations, her husband's testimony, the record evidence, and the medical opinions regarding her chronic skin lesions:

> The claimant alleges her morbid obesity and history of skin lesions prevent her from working. As a result of her weight, the claimant states she is unable to walk short distances without experiencing extreme shortness of breath and significant sweating (Exhibit 10E:4). Her skin lesions are so severe the claimant indicates it is painful for her to move her body at all, even when she is sitting (Exhibit 10E:4 ). Specifically, the claimant states she has significant pain in her infected skin folds on her torso and inner

7

> thigh/pelvic area (Exhibit 10E:1). Due to her impairments, the claimant reports having difficulty using the restroom, difficulty cooking, and doing activities other than lying in bed or in her recliner (Exhibit 10E:5).
>
> The claimant's husband, Chris Kesinger, states in his April 2011 third party function report that the claimant sits, watches television, and sleeps throughout the day (Exhibit 7E:3). Mr. Kesinger states he has to help the claimant get dressed, he helps her use the toilet, and he helps clean and tend to the claimant's skin wounds (Exhibit 7E:4). While I have considered Mr. Kesinger's observations, these statements are not from a medically acceptable source and he is an interested party in this matter. Accordingly, I give Mr. Kesinger's statements partial weight.

(R. 17).

> In addition to limitations on her ability to move, the claimant's obesity has also caused the claimant to have chronic skin lesions in the skin folds from her large body mass. The claimant's skin condition consists of rashes that form between the folds in multiple areas of her body (Exhibit 8F:2). Specifically, she states these rashes cause her problems due to odor, infection and irritation (Exhibit 8F:2). The claimant endorses having rashes all over her body, especially on the mid-back region, abdomen, thighs and under her breasts (Exhibit 8F:2). She states her most problematic areas have been her left groin (Exhibit 8F:2).
>
> In 2009, the claimant was treated for cutaneous vasculitis and skin lesions (Exhibit 2F:5). Her symptoms included a petechial rash that evolved into a purpura, causing burning pain throughout her belly, and her upper and lower extremities (Exhibit 1F:10). These conditions resolved through the use of prednisone and antibiotics and the claimant was advised <u>not</u> to use over-the-counter medications to treat these conditions in the future (Exhibit 2F:5). While the claimant initially stopped working due to this condition, the claimant's treating physician authorized the claimant to return to work with no restrictions in November 2009 (Exhibit 2F:5).
>
> During the claimant's August 2011 consultative examination, the examiner noted that the claimant exhibits evidence of intertrigo in her obese skin folds in the mid-back region, under both of her breasts, and in the intertriginous regions of the groin and thighs (Exhibit 8F:5). Examination records also document significant odor about the region and she has

8

> hyperpigmentation in the affected regions suggesting chronic inflammation (Exhibit 8F:5).
>
> In an attempt to treat her rashes, the claimant <u>has used</u> over-the-counter medications and drying solutions, though she states she continues to be limited in her ability to work due to odor and her limited range of motion (Exhibit 8F:2).
>
> As for the opinion evidence, in [sic] the claimant's internal medicine consultative examiner, Dr. Henderson, notes the claimant has a limited range of motion due to her obesity and she has moderate to severe difficulty with her orthopedic maneuvers which are described above, although she was able to complete a number of them adequately (Exhibit 5F:4). I give Dr. Henderson's opinions significant weight because they are consistent with the claimant's overall record and the opinions are consistent with the limitations contained in the claimant's residual functional capacity.
>
> The medical expert, Dr. Houser, testified that the claimant's obesity and skin problems do not meet or equal a listing, though he does note these conditions are severe. Dr. Houser further testified that the claimant can likely perform work at the sedentary exertional level. I give Dr. Houser's opinions great weight because they are consistent with the claimant's overall record, including the fact that the claimant's condition was previously controlled with medications.

(R. 18-19) (emphases in original).

From the evidence discussed by the ALJ, it is possible to find that all of the criteria of Listing 8.04 are met. Plaintiff's skin lesions might be found to involve multiple body sites or critical body areas and to result in very serious limitations. Even if one just considered example (c) provided in the regulations, it might be determined based on this evidence that Plaintiff has skin lesions in the perineum, or both inguinal areas that very seriously limit Plaintiff's ability to ambulate. From this evidence, it might be found that Plaintiff's lesions have persisted for at least three months.

And, it might be determined that this persistence is in spite of continuing treatment as prescribed.  The ALJ's decision can be read to imply a finding that Plaintiff did not follow treatment as prescribed because she used over-the-counter remedies to treat her skin lesions despite her physician's instructions that she not use over-the-counter remedies to treat "these conditions" in the future.  (R. 18).  However, Plaintiff notes that there are two different skin disorders considered in the record--vasculitis, and lesions in her skin folds.  She argues that it was her vasculitis which resolved with use of prednisone in 2009, and that her physician instructed her to avoid over-the-counter medications <u>which could induce her vasculitis</u>.  (Pl. Br. 9) (citing R. 322).  Record evidence tends to support Plaintiff's argument, and it is necessary for the Commissioner on remand to consider both skin disorders, to determine whether Plaintiff has been improperly using over-the-counter medications, and to explain her determination.

And, the ALJ said nothing regarding his findings with respect to any of the criteria of Listing 8.04.  This failure cannot be said to be the result of surprise regarding the Listing, because the ALJ specifically noted Dr. Houser's testimony that Plaintiff's "skin problems do not meet or equal a listing."  (R. 18).  It might also be argued that the ALJ discounted the credibility of Plaintiff's testimony, only accorded "partial weight" to her husband's opinions, and gave "significant weight" and "great weight" to Dr. Henderson's opinion and Dr. Houser's opinion, respectively.  Yet, at step three of the evaluation the ALJ said nothing regarding the criteria of any skin disorder Listing, and did not explain why those criteria are not met or equaled.  Thus, it is impossible for the court to know

why the criteria of the Listing are not met and which criteria are not met, even if it accepts the ALJ's credibility determination and his evaluation of the opinion evidence.

The degree of severity which might potentially meet or equal the criteria of Listing 8.04 are not intuitively obvious to a judicial reviewer such as this court, and the Commissioner has the expertise to explain the degree of severity which is required by that Listing.  But, the court may not merely affirm the Commissioner's decision because the Commissioner is the expert.  The court must evaluate the decision and determine whether the Commissioner applied the correct legal standard, and whether the record evidence supports the decision reached.  Where, as in this case, the ALJ both did not explain the legal standard which was applied and did not explain how the evidence supports his decision, the court is unable to perform a meaningful judicial review.  Remand is necessary for the Commissioner to properly explain the legal standard which is applicable to Listing 8.04, and to explain how the evidence supports a determination that the severity of that Listing is or is not met or equaled.

The Commissioner argues that any insufficiency in the ALJ's consideration of Listing 8.04 is harmless because the ALJ proceeded past step three and determined at step four that Plaintiff is able to perform past relevant work, and at step five that there is other work available for an individual with the RFC of which Plaintiff is capable.  (Comm'r Br. 4) (citing Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008)).  The court's determination in this regard is dictated by the holding in Carpenter.  As the Commissioner points out, the Carpenter court acknowledged that an ALJ's failure to consider a Listing

would be harmless error "if findings he made elsewhere conclusively negated" the claim under that Listing.  Id.  However, that court determined the error was not harmless because the ALJ's findings elsewhere in his decision did not "unambiguously negat[e]" the claim to satisfy the elements of the Listing.  Id. 537 F.3d at 1268.  The same is true here.  Nothing in the decision at issue conclusively demonstrates that the criteria of Listing 8.04 are not satisfied.  Therefore remand is necessary for the Commissioner to properly consider whether the criteria of Listing 8.04 are met or equaled.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this  4th  day of February 2015, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**